IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT STEVEN FORISH, | ) | NO.  2:23-cv-1316 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| JOHN BRASILE, | ) | JURY TRIAL DEMANDED |
| CHUCK McDOWELL, JR., | ) | |
| LATROBE VOLUNTEER FIRE | ) | |
| DEPARTMENT, | ) | |
| CITY OF LATROBE, and | ) | |
| RANDALL D. GARDNER, | ) | |
| | ) | |
| Defendants | ) | |

## **COMPLAINT**

## **JURISDICTION AND VENUE**

1.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331 and 1343(1), (3), and (4).

2.    This is an action for damages authorized and/or arising under 42 U.S.C. §1983, 42 U.S.C. §1985, and the First, Fourth, and Fourteenth Amendments to the United States Constitution.

3.    The matter in controversy, exclusive of interest and costs, exceeds the sum of One Hundred Fifty Thousand ($150,000.00) Dollars.

4.    All conditions precedent to jurisdiction have been complied with or have occurred.

5.    State claims are brought pursuant to this Honorable Court's supplemental jurisdiction under 28 U.S.C. §1367(a).

6.     Venue is proper in the Western District of Pennsylvania and pursuant to 28 U.S.C. §1391.  Plaintiff resides in the Western District of Pennsylvania and the Defendants' alleged unlawful conduct  which forms the legal basis for Plaintiff's causes of action,  as set forth in the within Complaint, occurred  in the Western District of Pennsylvania.

## PARTIES

7.     Plaintiff, Robert Steven Forish (hereinafter "Forish") is an adult individual residing at 517 Weldon Street, Latrobe, Westmoreland County, Pennsylvania 15650.

8.     Defendant, John Brasile (hereinafter "Brasile") is an adult individual who at all times relevant to the within action   served as Fire Chief for Defendant Fire Department and all of its constituent hose companies, with  principal address at P.O. Box 172, Latrobe, Westmoreland County, Pennsylvania 15650.

9.     Defendant, Chuck McDowell, Jr. (hereinafter "McDowell") is an adult individual who, at all times relevant to the within action,   served as President of Defendant Fire Department, with  principal address at P.O. Box 172, Latrobe, Westmoreland County, Pennsylvania 15650.

10.     Defendant, Latrobe Volunteer Fire Department (hereinafter "Defendant Fire Department") is a non-profit corporation, organized and licensed under the non-profit corporation law of the Commonwealth of Pennsylvania, with its principal address at P.O. Box 172, Latrobe, Westmoreland County, Pennsylvania 15650.

11.     Defendant, City of Latrobe (hereinafter "Defendant City") is a political subdivision of the Commonwealth of Pennsylvania,  incorporated as a City of the Third Class, and is situated within the Western District of Pennsylvania, with  principal  address located at  901 Jefferson Street, Latrobe, Westmoreland County, Pennsylvania 15650.

2

12.     Defendant, Randall D. Gardner (hereinafter Gardner) is an adult individual who at all times herein mentioned was employed  as a detective in the Westmoreland County District Attorney's Office, located at 2 North Main Street, Suite 206, Greensburg, Pennsylvania 15601.

## CHRONOLOGICAL STATEMENT OF PERTINENT FACTS

13.     At all times relevant to the within matter, Defendant Fire Department had a duty to enforce its by-laws and protect its members, including Plaintiff, and its actions, by and through its supervisory/elected executive officers, constituted state action, under color or title of state or municipal or public law or ordinance.

14.     At all times relevant to the within matter, Defendant Brasile:

a.  was responsible for protecting the civil rights of all volunteer firefighters, including those rights mandated under the First and Fourteenth Amendments of the United States Constitution;

b.  was acting within the scope of his duties and  authority as Fire Chief and  under color or title of state or municipal public law or ordinance and supervised or controlled the treatment of all Latrobe Volunteer Firefighters;

c.  had the ultimate responsibility for complying with all federal and state laws, the City Code, Defendant Fire Department By-laws, the individual hose company by-laws and protecting the civil rights of all City of Latrobe firefighters;

d.  had policy-making authority for Defendant Fire Department and was responsible for carrying out his supervisory responsibilities in a manner which complied with all federal and state laws, the Latrobe City Code, Defendant Fire Department By-laws and the individual by-laws for each incorporated hose company.

15.      At all times relevant to the within action, Defendant, Chuck McDowell, Jr:

a.  acted within the scope of his duties and  authority as Volunteer Fire Department President and  under color or title of state or municipal public law or ordinance and represented all Latrobe volunteer firefighters and hose companies comprising Defendant Fire Department; and

3

      b.   in his capacity as President of Defendant Fire Department, had the duty to strictly abide by and enforce  Defendant Fire Department By-laws and all hose company by-laws.

16.    At all times relevant to the within action, Defendant City of Latrobe:

      a.   owns, operates, manages, directs and controls the volunteer fire department and all hose companies within the City of Latrobe.

      b.   by its City Code, adopted and incorporated the Defendant Fire Department By-laws and supervised, and was responsible for,  its actions, including the actions of its supervisory personnel; and

      c.   is empowered to establish, regulate and control its fire department for the purpose of protecting and preserving the persons and property within the jurisdiction of the City.

17.    Plaintiff Forish is a Latrobe Volunteer Fire Company firefighter since on or about 1997.

18.    At all times herein mentioned, Plaintiff Forish was a member and Treasurer of Latrobe Goodwill Hose Company No. 1 (hereinafter "Hose Company No. 1").

19.    Hose Company No. 1 is a corporation licensed under the non-profit corporation laws of the Commonwealth of Pennsylvania with its address at 390 Oak Street, Latrobe, Westmoreland County, Pennsylvania l5650.

20.    Hose Company No. 1 owns a property located at 300 Alexandria Street, Latrobe, Westmoreland County, Pennsylvania, including its structure, the contents within, and a liquor license issued by the Pennsylvania Liquor Control Board.

21.    The By-laws for Hose Company No. 1 were adopted on April 12, 1998.

22.    At all times herein mentioned, and pursuant to the provisions of the Pennsylvania Whistleblower Law,   43 P.S. §§ 1423 – 1428,   Plaintiff Forish and/or other members of Hose Company No. 1 selected and/or requested several members of Hose Company No. 1, to wit,

Christopher Blessing, Nico Giovannagelo, Fabian Giovannagelo, Cody Giovannagelo, and Ryan

Jones, to act on his/their behalf for purposes of making a good faith report, verbally or in writing,

to Defendant City of Latrobe, its governing body and supervisory officials, and community

residents of instances of civil and criminal wrongdoing, fraud and/or waste by Defendant Brasile

in the operation of Defendant Fire Company.

23.    Among the  numerous instances of civil and criminal wrongdoing, fraud and/or

waste  that Defendant Brasile allegedly engaged in, and that Plaintiff Forish, individually and by

and through his aforesaid representatives, publicly spoke about and addressed as matters of public

concern  were the following:

a.  Defendant Brasile's negligent interference with the grant application process by wrongfully expelling Assistant Chief Gessler and precluding Defendant City from applying for and receiving FEMA grant money for fire safety equipment and turnout gear for brush forest fires.

b.  Defendant Brasile's illegal shutdown of Hose Company No. 1 and suspension of seven (7) masked firefighters;

c.  Defendant Brasile's intentional and/or negligent prevention of Defendant City from obtaining grant money to purchase firefighting equipment which complies with NFPA standards;

d.  Defendant Brasile's sexual harassment of a female firefighter, misogynistic attitude toward women, and creation of a sexually hostile work environment within the Defendant Fire Department;

e.  Defendant Brasile's failure to develop and/or effectuate proper safety policies for Defendant Fire Company;

f.  Defendant Brasile's knowing, intentional, and fraudulent falsification of his firefighter personal response times in order to unlawfully obtain a higher personal stipend;

g.  Defendant Brasile's illegal manipulation, exaggeration, and falsification of the Latrobe Fire Department's emergency fire call response times in order to wrongfully and fraudulently inflate Defendant Fire Department's ISO rating for purposes of obtaining future PEMA and/or FEMA grant funding;

h.   Defendant Brasile's intentional and/or negligent failure to personally inspect the fire hydrants within Defendant City; and

i.   Defendant Brasile's knowing, deliberate, and false certification that one hundred (100%) percent of Defendant City's fire hydrants were functional when, in reality, more than fifty (50%) percent of said fire hydrants were not functional.

24.   On or about November 7, 2019, Fabian Giovannagelo directly confronted and challenged Defendant Brasile concerning the allegations described in the preceding paragraph while exercising his First and Fourteenth Amendment rights to engage in speech as a private citizen about matters of public concern and safety.

25.   On December 2, 2019, Defendant Brasile, without legal authorization or justification, ordered the suspension of seven (7) "masked firefighters" and the shutdown of Hose Company No. 1   in violation of the Latrobe City Code, Fire Department By-laws and Hose Company No. 1 By-laws.

26.   On December 2, 2019, Fabian Giovannagelo complained to Rosemarie L. Wolford, Mayor of the City of Latrobe (hereinafter "Wolford"), concerning Defendant Brasile's lack of leadership, lack of proper safety policies, reprehensible comments about women, including a firefighter's wife, sexual harassment of a female firefighter, delaying fire call responses, and jeopardizing the City of Latrobe's fire safety and ability to obtain grant monies in order to comply with NFPA standards.

27.   In at a city council meeting on or about December 2019, Plaintiff Forish advised Mayor Wolford and Latrobe City Council of Defendant Brasile's history of aggressive and unlawful retaliation against members of the Latrobe Volunteer Fire Department who exercised their First Amendment rights to citizen speech about matters of public concern, and who reported in good faith  Brasile's  instances of civil and criminal wrongdoing, fraud,  and waste in his official

capacity as Fire Chief, and warned Mayor Wolford and Latrobe City Council to "rein him (Brasile) in," but Plaintiff Forish's admonitions went unheeded, and  were knowingly, consciously, deliberately, and summarily dismissed and ignored by Mayor Wolford and Latrobe City Council, who described such matters  as "fire department business" and not matters with which the  Mayor or Latrobe City Council should be concerned or involved.

28.    In December 2019, an election for the position of LVFD Fire Chief was scheduled between Defendant Brasile and Hose Company No. 1 member, Nico Giovannagelo (hereinafter "N. Giovannagelo").

29.    Immediately prior to the aforesaid December 2019 election for the position of LVFD Fire Chief, Defendant Brasile illegally suspended N. Giovannagelo, removed his name from the ballot and declared victory by acclamation.

30.    On January 2, 2020 a meeting of the entire LVFD was conducted.

31.    At the January 2, 2020 meeting of the entire LVFD, Fabian Giovannagelo stated that Defendant Brasile's conduct and statements, including, *inter alia*, his falsifying his fire call response numbers, falsely claiming to be at fire calls from which he was absent, falsifying the fire department's ISO rating and approving defective fire hydrants, necessitated a full investigation and Brasile's suspension as fire chief.

32.    At the close of the aforesaid January 2, 2020 meeting, over two-thirds of the membership in attendance voted to conduct a full investigation into Defendant Brasile's conduct and to suspend him as LVFD Fire Chief.

33.    On January 3, 2020, former LVFD President, Tom McMaster (hereinafter "McMaster")  advised Fabian Giovannagelo that Mayor Wolford had intervened on Defendant Brasile's behalf and ordered that the vote of the LVFD's membership to suspend Brasile be

overturned and that the City of Latrobe validate the December 2019 election results for LVFD fire chief.

34.　　On January 9, 2020, at a regular monthly meeting and properly assembled quorum of Hose Company No. 1, Defendant Brasile's history of retaliatory actions against members of Hose Company No. 1, including his suspending, threatening expulsion of, and/or expelling Hose Company No. 1 members from the LVFD, was discussed and it was unanimously agreed, *inter alia*, that if Brasile were in the future to engage in such unlawful retaliation against any Hose Company No. 1 member/s:

　　　　a.　Hose Company No. 1 would pay for any legal fees incurred to represent and defend said member/s against such unlawful retaliation; and

　　　　b.　in accordance with the past practices of Hose Company No. 1, the monetary amounts to be allocated to said legal fees/representation resulting from Defendant Brasile's unlawful retaliatory actions would be left to the authority and discretion of the Hose Company No. 1 President and Treasurer, regardless of whether said expenditures were mentioned in the monthly minutes of Hose Company No. 1.

Copies of the sworn affidavits of thirteen (13) members of Hose Company No. 1 confirming the above-stated averments collectively are attached hereto as Exhibit "P-2(a)" through "P-2(m)" inclusive and incorporated by reference as though set forth at length below.

35.　　At the LVFD's February 2020 meeting, which was attended by thirty-four (34) volunteer fire department members, a motion was made to investigate Defendant Brasile's alleged wrongful conduct and to hold a new election for Fire Chief, with the members in attendance voting 34-0 in favor of holding a new election for Fire Chief.

36.　　 In accordance with the LVFD's By-laws, representatives of the five (5) hose companies were instructed to inform their membership of the forthcoming election for LVFD Fire

Chief, which was scheduled for Thursday, March 5, 2020, and that a daytime and evening vote would be taken.

37. On March 5, 2020, the election for LVFD Fire Chief was conducted and resulted in a Hose Company No. 1 member, to wit, N. Giovannagelo, defeating Defendant Brasile, with 42 votes cast in favor of N. Giovannagelo and 17 votes cast in favor of Brasile.

38. Subsequent to the posting of the March 5, 2020 election results, Brasile contended that said election was invalid because all of his supporters did not vote and had they voted, he would have won the election.

39. On March 6, 2020, Fabian Giovannagelo was advised by former LVFD President McMaster that neither Mayor Wolford nor the City of Latrobe would accept the results of the March 5, 2020 election for Fire Chief, but was not provided by McMaster or any representative or policymaker for the City of Latrobe with legal justification for not accepting a vote which was scheduled and taken in strict compliance with applicable by-laws.

40. On March 6, 2020, Fabian Giovannagelo, in his capacity as President of Hose Company No. 1, called for a Special Meeting on Sunday March 8, 2020 in order to conduct a membership vote to determine whether Defendant Brasile should be expelled for just cause as a member of Hose Company No. 1.

41. On Sunday, March 8, 2020, a Special Meeting of Hose Company No. 1 was held and attended by approximately twenty-two (22) members, and resulted in a unanimous vote to expel Defendant Brasile as a member of Hose Company No. 1.

42. On March 9, 2020, Hose Company No. 1 Secretary, Cody Giovannagelo (hereinafter "C. Giovannagelo") prepared and signed a letter advising Defendant Brasile of the March 8, 2020 unanimous vote expelling him from the membership of Hose Company No. 1, and

said letter was witnessed by Hose Company No. 1 members Christopher Blessing (hereinafter

"Blessing") and Ryan Jones (hereinafter "Jones").

43.    On March 9, 2020, N. Giovannagelo appeared at a Latrobe City Council monthly

meeting and testified before City Council and the media that:

    a.    "Chief Brasile has held Hose Company No. 1 on fire calls, even some close to our station. This is not safe for our community."

    b.    Brasile lacked leadership, supervision and proper safety policies to protect the community;

    c.    Brasile was dishonest and falsified personal fire call responses in order to obtain greater personal stipend payments, which may be illegal;

    d.    Brasile falsely initiated the city-wide call responses in order to inflate the City of Latrobe's  ISO rating for federal grant money, which may be illegal;

    e.    Brasile has allowed more than fifty (50%) percent of the fire hydrants to remain dysfunctional, pumping rusty water through the fire trucks at an unsafe intensity level;

    f.    Brasile had improperly interfered with and delayed the grant application process; and

    g.    N. Giovannagelo and his family reside inside the City of Latrobe and are at risk due to Brasile's conduct.

44.    Prior to March 10, 2020, Hose Company No. 1 Assistant Chief John David Gessler

(hereinafter "Gessler") engaged in speech as a private citizen on matters of public concern  at

several meetings of the Latrobe City Council, monthly meetings of the LVFD and at meetings of

Hose Company No. 1 regarding  Defendant Brasile's alleged wrongful conduct, including:

    a.    Alleging that Brasile's reckless and unjustified suspension of masked firefighters created an unnecessary fire-related risk to the citizens and structures of the City of Latrobe;

    b.    Alleging that Brasile was falsifying his own personal call responses in order to increase his stipend payments  and further was falsifying fire department call response numbers in order to obtain grant money;

c. Complaining of the increased safety risks caused by Brasile's preclusion of Hose Company No. 1 firefighters from responding to fire calls in close proximity to, and within the jurisdiction of, Hose Company No. 1;

d. Complaining that Brasile falsely claimed to have filed an application for a Staffing for Adequate Fire and Emergency Response (SAFER) grant as a contrived, false reason to suspend Hose Company No. 1 for a period of three (3) days and to retaliate against and suspend seven (7) individual members of Hose Company No. 1, including C. Giovannagelo and N. Giovannagelo.

45.     In early March, 2020,   in direct retaliation for Assistant Chief Gessler exercising his right of citizen speech on matters of public concern as guaranteed and protected by the First and Fourteenth Amendments to the United States Constitution, Defendant Brasile expelled Assistant Chief Gessler from the LVFD. A copy of Brasile's aforesaid expulsion letter to Assistant Chief Gessler is attached hereto as Exhibit "P-3" and incorporated by reference as though set forth at length.

46.     On March 10, 2020, City of Latrobe Manager, Michael Gray (hereinafter "Gray") advised N. Giovannagelo that as a result of the aforesaid March 8, 2020 unanimous vote of Hose Company No. 1 to expel Brasile for just cause from its membership, Latrobe City Council had formed a committee "to investigate the allegations made for the removal of Fire Chief John Brasile for cause." A copy of Gray's letter to N. Giovannagelo is attached hereto as Exhibit "P-4" and incorporated by reference as though set forth at length below.

47.     On March 13, 2020, as a direct and proximate result of the Covid-19 pandemic, the City of Latrobe was declared to be in the "red" area and all citywide, nonessential businesses were suspended by Mayor Wolford.

48.     On March 14, 2020 at 1:54 PM, Defendant Brasile forwarded an email to all LVFD personnel, stating;

ECM2: (ECM2 AllCall Message – 911 Call) Effective immediately all City Buildings will go on lockdown due the potential spread of covid-19 virus this includes all Fire Stations  Fire personnel will be permitted to respond to emergency responses only. There will be no leisure activity permitted in the Stations, after release of any and all incidents, personnel should immediately clear the Station. This will be in effect until March 20th and comes by order of City Administration.

Thanks John
The message was sent by : brazmo.jb@gmail.com. Any direct replies should be sent to that address STOP

A copy of said email is attached hereto as Exhibit "P-5" and incorporated by reference as though set forth at length below.

49.     As a direct and proximate result of the Covid-19 pandemic, Fabian Giovannagelo and other members of Hose Company No. 1 were delayed in meeting with the Latrobe City Council committee investigating Defendant Brasile's removal for cause from Hose Company No. 1 and supplying requested information, and the aforesaid March 9, 2020 letter of expulsion could not be personally delivered to Brasile.

50.     On March 17, 2020, the LVFD received a letter from City of Latrobe Manager Gray advising that the City of Latrobe had validated the results of the December 2019 election, wherein Brasile removed opponent N. Giovannagelo's name from the ballot and ran unopposed, and declared Brasile to be its Fire Chief.

51.     On May 15, 2020, Brasile was served by a constable with the previously undelivered certified letter from C. Giovannagelo advising him that he had been expelled from Hose Company No. 1.

52.     Prior to May 27, 2020, and as a proximate result of the aforesaid March 2020 suspension of fire personnel meetings and lockdown of all City of Latrobe municipal buildings due to the Covid-19 virus,  Fabian Giovannagelo, pursuant to his authority and in his capacity as

President of Hose Company No. 1, signed  multiple blank checks from  Hose Company No. 1's bank account with Westmoreland Federal Savings and Loan Association of Latrobe, including check numbers 5356, 5360 and 5364 as hereinafter described, for purposes of facilitating  the Treasurer's payment of the business expenses and liabilities of  Hose Company No. 1.

53.    On May 27, 2020, in direct retaliation for their protected citizen's speech on matters of public concern and in further violation of the Latrobe City Code, LVFD By-laws, and Hose Company No. 1 By-laws, Fire Chief Brasile expelled Fabian Giovannagelo, Cody Giovannagelo, Nico Giovannagelo, Christopher Blessing, and Ryan Jones   from the LVFD, and   letters of expulsion were served upon said individuals by Constable on or about May 29, 2020. Copies of said letters of expulsion are collectively attached hereto as Exhibits "P-6(a)" through  "P-6(e)" inclusive and incorporated by reference as though set forth at length below.

54.    On May 30, 2020, immediately following their May 29, 2020 receipt of service of Defendant Brasile's aforesaid letters of expulsion from the LVFD, Fabian Giovannagelo, Blessing, Jones, Nico Giovannagelo and Cody Giovannagelo  retained legal counsel, to wit, Fredrick E. Charles, Esquire, of 441 Linden Street, Allentown, Pennsylvania 18102, to appeal their aforesaid expulsion from the LVFD and to  represent their legal interests in a future federal civil rights  lawsuit against  Defendants Brasile, LVFD,  LVFD President Chuck McDowell, Jr., the City of Latrobe, and  Mayor Wolford,

55.    On May 30, 2020, in accordance with the aforesaid unanimous agreement of the quorum/members of Hose Company No. 1 attending the January 9, 2020 meeting, to wit,  to provide financial assistance for legal representation to any member subjected to  Defendant Brasile's unlawful retaliatory and expulsion tactics, a check (No. 5356) was issued from Hose Company No. 1's bank account with Westmoreland Federal Savings and Loan Association of Latrobe to Fredrick

E. Charles, Esquire in the amount of Five Thousand Five Hundred ($5,500.00) Dollars, and co-signed by Plaintiff Forish in his official capacity as Treasurer of Hose Company No. 1. A copy of said check is attached hereto as Exhibit "P-7" and incorporated by reference as though set forth at length below.

56.     On June 5, 2020, a timely written appeal requesting a hearing before the Board of Appeals was hand-delivered to Defendant LVFD President, Chuck McDowell, Jr. (hereinafter "McDowell") by Fredrick E. Charles, Esquire on behalf of the aforesaid expelled members of Hose Company No. 1.

57.     Subsequent to his June 5, 2020 receipt of the aforesaid written appeal and request for hearing before the board of appeals submitted by Fredrick E. Charles, Esquire on behalf of the expelled members of Close Company No. 1, Defendants McDowell, Jr. and/or Brasile failed to provide the expelled members of Hose Company No. 1 with proper legal notice of the scheduling of an appeal hearing, nor did they afford said individuals a proper name-clearing hearing but, instead:

     a.  the expelled members of Hose Company No. 1 received sheets of paper which contained no letterhead, no date, no signature nor any identifying factor as to who created said sheets of paper;

     b.  the aforesaid unidentifiable sheets of paper contained accusations against the aforesaid members of Hose Company No. 1 that differed from those contained in Brasile's aforesaid illegal May 27, 2020 expulsion letters; and

     c.  the expelled members of Hose Company No. 1 were never properly or legally notified of a date, time and location of any appeal hearing, or that their appeal would be heard by a Board of Appeals, as mandated by the applicable bylaws.

58.     Prior to June 25, 2020, Plaintiff Forish, in his capacity as LVFD First Vice President and Hose Company No. 1's elected representative to the Board of Appeals, attempted to ascertain whether an appeal hearing had been scheduled on behalf of the expelled members of

Hose Company No. 1,  but was not provided any information by Defendants McDowell, Jr.  or Brasile concerning an appeal before the Board of Appeals and was wrongfully threatened by Brasile with arrest if Forish attempted to appear or participate in any appeal proceedings involving the aforesaid expelled members of Hose Company No. 1.

59.    On June 24, 2020, in accordance with the aforesaid unanimous agreement of the quorum/members of Hose Company No. 1 attending the January 9, 2020 meeting, to wit,  to provide financial assistance for legal representation to any member subjected to Defendant Brasile's unlawful retaliatory and expulsion tactics, a check (No. 5360) was issued from Hose Company No. 1's bank account with Westmoreland Federal Savings and Loan Association of Latrobe to Fredrick E. Charles, Esquire in the amount of Five Thousand Five Hundred ($5,500.00) Dollars, and co-signed by  Plaintiff Forish in his official capacity as Treasurer.  A copy of said check is attached hereto as Exhibit "P-8" and incorporated by reference as though set forth at length below.

60.    On June 25, 2020, Fredrick E. Charles, Esquire, on behalf of the expelled members of Hose Company No. 1, forwarded correspondence to Kim R. Houser, Esquire,  Solicitor for the LVFD and John K. Greiner, Esquire, Solicitor for the City of Latrobe, advising them of the above-described procedural illegalities and errors  in the expulsion appeal process  and requesting  their intervention on behalf of their respective principals in order to correct said  illegalities and errors, but received no response from Greiner and a telephone call, but no further response, from Houser.

61.    On June 29, 2020, Defendant McDowell, Jr. forwarded correspondence to Fabian Giovannagelo, Cody Giovannagelo, and Nico Giovannagelo advising that there had been an "appeal meeting" held on Saturday, June 27, 2020 in the LVFD training room and the Board of Appeal had decided to expel them from the Department. Copies of said correspondence are attached hereto as Exhibits "P-9(a)," "P-9(b)," and "P-9(c)," respectively.

62.    On July 13, 2020, Defendant McDowell, Jr. forwarded similar correspondence to Christopher Blessing and Ryan Jones advising that there had been an "appeal meeting" held on Saturday, June 27, 2020 in the LVFD training room and the Board of Appeal had decided to expel them from the Department. Copies of said correspondence are attached hereto as Exhibits "P-9(d)" and "P-9(e)," respectively.

63.    On July 9, 2020 and July 14, 2020, Fredrick E. Charles, Esquire  forwarded correspondence to City of Latrobe Manager, Michael Gray and Solicitors Houser and Greiner, requesting that the City of Latrobe immediately reverse the illegal expulsion of the aforesaid members of Hose Company No. 1, however, neither Gray nor any policymaking, supervisory or management level employee of the City of Latrobe responded to said correspondence.

64.    On July 10, 2020, in accordance with the aforesaid unanimous agreement of the quorum/members of Hose Company No. 1 attending the January 9, 2020 meeting, to wit,  to provide financial assistance for legal representation to any member subjected to Defendant Brasile's unlawful retaliatory and expulsion tactics, a check (No. 5364) was issued from Hose Company No. 1's bank account with Westmoreland Federal Savings and Loan Association of Latrobe to Fredrick E. Charles, Esquire in the amount of Ten Thousand  ($10,000.00) Dollars, and co-signed by  its Treasurer, Plaintiff Forish.   A copy of said check is attached hereto as Exhibit "P-10" and incorporated by reference as though set forth at length below.

65.    On August 14, 2020, Fredrick E. Charles, Esquire filed a federal lawsuit  in the United States District Court for the Western District of Pennsylvania (term number 2:20-cv-1212) on behalf of the aforesaid expelled members of Hose Company No. 1, to wit, Fabian Giovannagelo, Cody Giovannagelo, Nico Giovannagelo, Christopher Blessing, and Ryan Jones, as plaintiffs and naming  Latrobe Fire Chief Brasile,   the Latrobe Volunteer Fire Department (LVFD),  the City of

Latrobe,    Rosemarie M. Wolford, Mayor, and    LVFD President, Chuck McDowell, Jr. as Defendants. A copy of said federal Complaint is attached hereto as Exhibit  "P-1" and incorporated by reference as though set forth at length below.

66.    On September 27, 2020, Fredrick E. Charles, Esquire forwarded correspondence to the aforesaid expelled members of Hose Company No. 1, to wit, Fabian Giovannagelo, Cody Giovannagelo, Nico Giovannagelo, Christopher Blessing, and Ryan Jones, acknowledging that Hose Company No. 1 had paid to him on their behalf the check payments referenced in paragraphs 54, 58, and 63 above, totaling Twenty-One Thousand ($21,000.00) Dollars,    for purposes of prosecuting the  aforesaid federal litigation  (Docket No. 2:20-cv-1212)  against  defendants, Fire Chief Brasile, City of Latrobe, LVFD, Mayor Wolford, and LVFD President McDowell, Jr.. A copy of said correspondence is attached hereto as Exhibit P-11" and incorporated by reference as though set forth at length below.

67.    On July 20, 2021, Defendant Randall D. Gardner filed *crimen falsi* criminal charges against Fabian Giovannagelo and Plaintiff Forish, charging each of them with Theft by Deception, 18 Pa.C.S. §3922(a)(1) (Felony 3); Theft by Unlawful Taking or Disposition – Movable Property, 18 Pa.C.S. §3921(a) (Felony 3); and Misapplication of Entrusted Property and Property of Government or Financial Institution, 18 Pa.C.S. §4113(a) (Misdemeanor 2) arising from the payment of the above-referenced checks from  Hose Company No. 1 to Fredrick E. Charles, Esquire.  A copy of the Police Criminal Complaint and Affidavit of Probable Cause filed against Giovannagelo, and the Unified Judicial System of Pennsylvania Web Portal Docket Statements of Fabian Giovannagelo (MJ-10208-CR-0000275-2021 ) and Plaintiff Forish (MJ-10208-CR-0000274-2021) are attached hereto as Exhibits "P-12,"   P-13," and  "P-14," respectively, and incorporated by reference as though set forth at length below.

68.     At all times herein mentioned, Plaintiff Forish's arrest pursuant to  the aforesaid *crimen falsi*  felony and misdemeanor criminal charges was openly announced and  publicized by newspaper and television media,  *inter alia*, to all residents and visitors of the City of Latrobe, Westmoreland County and surrounding counties and municipalities.

69.     Prior to July 20, 2021, Plaintiff Forish possessed no prior criminal record of arrests and/or convictions, and was a respected firefighter and community resident with an unblemished reputation for truthfulness and veracity.

70.     At all times herein mentioned, no evidence or probable cause existed to support the aforesaid *crimen falsi* criminal charges filed by Defendant Gardner against Plaintiff Forish and Fabian Giovannagelo.

71.     At all times herein mentioned, the aforesaid *crimen falsi* criminal charges were filed against Plaintiff Forish  contemporaneously with, and  in retaliation for, his protected First Amendment citizen speech on  matters of public concern as previously described, and pursuant to Defendants' unlawful and conspiratorial   agreement   to punish him for said Constitutionally protected activities and pursuits.

72.     At all times herein mentioned, the above-described *crimen falsi* felony and misdemeanor  criminal charges were  filed by Defendant Gardner without any probable cause or supporting evidence and   pursuant to a conspiratorial  agreement  with  the above-captioned Defendants to  unlawfully  retaliate  against  Plaintiff Forish and Fabian Giovannagelo for  (i) reporting in good faith  Defendant Brasile's aforesaid instances of wrongdoing and waste pursuant to the Pennsylvania Whistleblower Law and (ii) exercising their First Amendment right to citizen speech on matters of public concern, and were outrageous  and  intended by the above-named defendants to  wrongfully  cause  Plaintiff Forish and Fabian Giovannagelo    to  suffer severe

emotional distress, embarrassment, humiliation, and irreparable harm to their reputations in the community for truth and veracity.

73.    At all times herein mentioned, Plaintiff Forish suffered severe, intense, prolonged and highly unpleasant mental reactions and emotional distress that no reasonable person could be expected to endure, as a direct and proximate result of the filing against him of the aforesaid *crimen falsi* felony and misdemeanor criminal charges, including fright, mental anguish, embarrassment, humiliation, depression, anxiety, horror, grief, shame, anger, chagrin, disappointment, worry, and/or other mental disorders classified in the Diagnostic and Statistical Manual of Mental Disorders-Fifth Edition-Text Revised (DSM-V-TR), as well as cardiac and other physical harm and maladies as set forth in Plaintiff Forish's medical records, which are incorporated by reference as though set forth at length below, and  arising from the above-captioned defendants' extreme and outrageous conduct as heretofore described.

74.    On December 20, 2021, at 12:00 p.m., preliminary hearings for Plaintiff Forish and Fabian Giovannagelo on the above-described criminal charges were scheduled jointly before Magisterial District Justice Michael Mahady, Magisterial District Number 10-2-08, 5954 State Road 981, Latrobe, Pennsylvania 15650.

75.    Plaintiff Forish's and Fabian Giovannagelo's December 20, 2021 preliminary hearings  involving  the aforesaid *crimen falsi* felony and misdemeanor criminal charges were attended  by television and newspaper media, and extensively reported to residents and visitors of the City of Latrobe, Westmoreland County, and surrounding municipalities.

76.    On December 20, 2021, the Commonwealth of Pennsylvania withdrew the aforesaid criminal charges against Giovannagelo and Plaintiff Forish following defense counsels' recommendation and offer to interplead the aforesaid Twenty-One Thousand ($21,000.00) Dollars

previously paid to Fredrick E. Charles, Esquire into an account supervised by the Westmoreland County Court of Common Pleas and/or its authorized agent,  pending the Court's final determination whether said payments to Attorney Charles on behalf of the aforesaid expelled Hose Company No. 1 volunteer firefighters were legally authorized by Hose Company No. 1.

77.    Claimant Fredrick E. Charles, Esquire  agreed to interplead and return  the aforesaid Twenty-One Thousand ($21,000.00) Dollars in controversy pursuant to Rules 2301 through 2324 of the Pennsylvania Rules of Civil Procedure pending  the Westmoreland County Court of Common Pleas' final disposition of this legal issue.

78.    Fredrick E. Charles, Esquire was not a party of record to the aforesaid Westmoreland County interpleader action, but subsequently filed a complaint demanding payment of the aforesaid Twenty-One Thousand ($21,000.00) Dollars for his legal services rendered on behalf of the expelled members of Hose Company No. 1 and/or Hose Company No. 1's officers and agents, including Giovannagelo and Plaintiff Forish, as previously described.

79.    Fabian Giovannagelo and Plaintiff Forish claimed no interest in the aforesaid Twenty-One Thousand ($21,000.00) Dollars in controversy.

80.     Plaintiff Forish, Fabian Giovannagelo,  and/or Hose Company No. 1 admitted the claim of, and subjected themselves to independent liability to, the claimant, Fredrick E. Charles, Esquire in respect to the subject matter of the interpleader action for reasons heretofore alleged.

81.    On or about August 29, 2022, at 9:00 a.m., a civil hearing was held at the Westmoreland County Courthouse,   2 North Main Street, Greensburg, Pennsylvania 15601 before the Honorable Harry F. Smail, Jr., Judge of the Court of Common Pleas of Westmoreland County, Pennsylvania, concerning the aforesaid Interpleader cause of action (Case No. 281 of 2022) filed by  Forish and Fabian Giovannagelo against the Commonwealth of Pennsylvania and

involving the subject $21,000.00 paid by Latrobe Hose Company No. 1 to Fredrick E. Charles, Esquire.

82.     At all times herein mentioned, the Commonwealth of Pennsylvania, in its capacity as Respondent and represented by   Westmoreland County Assistant District Attorney Leo J. Ciaramitaro, Esquire, attended and participated in the August 29, 2022 Interpleader   hearing conducted before Judge Smail.

83.      At all times herein mentioned, the Respondent, Commonwealth of Pennsylvania, acted as the legal representative of the above-captioned Defendants  in the Interpleader cause of action, whose subject matter involved Plaintiff Forish's and Fabian Giovannagelo's denial of Defendants' allegations that Plaintiff Forish and Giovannagelo had committed  *crimen falsi* felony and misdemeanor criminal offenses, to wit, Theft by Deception,  Theft by Unlawful Taking or Disposition – Movable Property,    and Misapplication of Entrusted Property and Property of Government or Financial Institution  in their disposition of the aforesaid Twenty-One Thousand ($21,000.00) Dollars of Hose Company No. 1 funds.

84.     At all times herein mentioned, the Commonwealth of Pennsylvania failed to answer the Petition for Interpleader filed by Plaintiff Forish and Fabian Giovannagelo, and offered no evidence to rebut Plaintiff Forish's and Fabian Giovannagelo's denial therein of any civil or criminal wrongdoing in the disposition of the aforesaid Twenty-One Thousand ($21,000.00) Dollars of Hose Company No. 1 funds.  The contents of said Petition for Interpleader in the Westmoreland County Court of Common Pleas (Case No.  281 of 2022) are incorporated by reference herein as though set forth at length below.

85.     On August 30, 2022, the Honorable Harry F. Smail, Jr. entered an Order granting the relief requested in   Plaintiff Forish's and Fabian Giovannagelo's Petition for Interpleader

pursuant to Rules 2301 through 2324 of the Pennsylvania Rules of Civil Procedure, finding the allegations of fact contained in said Petition for Interpleader to be true, and favorably terminating with prejudice the aforesaid *crimen falsi* criminal charges filed by the Commonwealth of Pennsylvania against Plaintiff Forish and Fabian Giovannagelo.

86.     The aforesaid interpleader litigation involved exhibits displaying confidential information required by law, ordered by the court, or otherwise necessary to effect the disposition of said matter including, without limitation, bank accounts, dates of birth and/or social security numbers of the defendants, Hose Company No. 1 and/or the claimant, Fredrick E. Charles, Esquire, and any and all pleadings, documents, records, exhibits and/or information filed in said interpleader cause of action were deemed by the Westmoreland County Court of Common Pleas to be confidential, sealed from public scrutiny, and accessible only by the parties, counsel of record, the court, and the custodian.

### COUNT I –
### PLAINTIFF v. ALL DEFENDANTS
### FIRST AMENDMENT- FREEDOM OF SPEECH
### 42 U.S.C. 1983 – RETALIATION

87.     Paragraphs 1 through 86 are incorporated by reference as though set forth at length below.

88.     Plaintiff avers that Defendant Fire Department performs a governmental function and as such is a state actor.

89.     Plaintiff further avers that:

   a.  Fire Protection is a public function which amounts to state action, even if the fire protection unit is comprised of voluntary or unpaid members;

   b.  the opportunity to serve as a voluntary firefighter constitutes a governmental benefit or privilege entitled to First Amendment protection;

c.  as a volunteer firefighter, he may not constitutionally be compelled to relinquish his constitutional rights that he would otherwise enjoy as a citizen to speak on matters of public interest or concern;

d.  First Amendment protection applies in a volunteer context;

e.  his First Amendment right to citizen speech on matters of public concern was clearly established at the time of Defendants' misconduct. *Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)*;

f.  Defendants  Brasile, McDowell, Jr., Latrobe Volunteer Fire Department, City of Latrobe, and Gardner  opposed, and were angered by, Plaintiff's exercise of his constitutional right to freedom of speech as a citizen on matters of public concern;

g.  the aforesaid Defendants entered into a conspiracy by joining in an agreement, plot, and/or plan to retaliate against Plaintiff and damage his reputation for honesty, truthfulness, and veracity for exercising his First Amendment constitutional  right to freedom of speech as a citizen regarding matters of public concern;

h.  Defendants  Brasile, McDowell, Jr., Latrobe Volunteer Fire Department, City of Latrobe, and Gardner acted  under color of state law, including but not limited to any color of any statute, ordinance, regulation, custom or usage and motivated by prejudice against Plaintiff due to his exercise of his First Amendment rights, including his right to freedom of speech as a citizen on matters of public concern, and engaged in conduct that deprived Plaintiff of his rights, privileges and/or immunities as secured by the Constitution of the United States of America, the applicable statutes and case law therein;

i.  Plaintiff's exercising of his rights under the First Amendment, including his right to free speech as a citizen on matters of public concern, was a substantial and motivating factors in Defendants' unlawful and retaliatory conduct as heretofore described;

j.  Defendant City of Latrobe acquiesced to, adopted, condoned, participated in, and acted in concert with the above-described wrongful and discriminatory conduct of Defendants Fire Department, Brasile, McDowell, Jr., and Gardner.

k.  At all times herein mentioned, Defendant City of Latrobe had an official policy or custom of retaliating against employees who exercise their First Amendment rights, including their rights to freedom of speech as citizens on matters of public concern.

     l.    Defendant City of Latrobe  was recklessly and deliberately indifferent to its policymakers, decision-makers, and supervisory or management level employees who engage in retaliation against employees/individuals who exercise their First Amendment rights, including their rights to freedom of speech as citizens on matters of public concern.

     m.   Defendant Gardner's filing of the aforesaid *crimen falsi* felony and misdemeanor criminal charges against Plaintiff  Forish without supporting evidence or probable cause was plainly incompetent or in knowing violation of the law. See *Ashcroft v. al-Kidd, 563 U.S. 731, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011)*.

90.    Plaintiff's speech was not pursuant to his duties and responsibilities with Defendant Fire Department or Hose Company No. 1 and constituted citizen speech on matters of public concern.

91.    Each disciplinary action imparted by Defendants, including the filing of the aforesaid *crimen falsi* felony and misdemeanor criminal charges against Plaintiff Forish, was contemporaneous to Plaintiff's above-described First Amendment citizen speech on matters of public concern.

92.    Defendants' custom and policy of retaliating against employees/individuals who exercise their First Amendment rights of citizen speech on matters of public concern was a direct and proximate cause of the deprivation of Plaintiff's rights and his resulting injuries and damages.

93.     As a direct and proximate result of Defendants' aforesaid retaliatory actions, Plaintiff has sustained, and will continue to sustain, damages, including severe mental anguish, emotional distress, embarrassment, humiliation, outrage, physical harm and/or irreparable damage to his reputation for honesty, truthfulness, and veracity,  as heretofore described.

WHEREFORE, Plaintiff, Robert Steven Forish, requests that this Honorable Court enter judgment in his favor and against the above-captioned Defendants, jointly and severally, and determine that Plaintiff has suffered the substantial and continuing injuries set forth above, and

that said injuries resulted from the deprivation of his civil and constitutional rights, discrimination

and other wrongful conduct by Defendants and award Plaintiff the following relief:

A.    A declaration that Defendants have violated Plaintiff's civil rights;

B.    Compensatory damages in excess of One Hundred Fifty Thousand ($ 150,000.00) Dollars;

C.    Punitive and exemplary damages, as appropriate, against the above-named non-municipal Defendants in their individual capacities;

D.    Injunctive relief, including entering an Order enjoining Defendants and all supervisory and management level employees of the Defendant City of Latrobe from engaging in further violations of the right to freedom of speech and procedural due process and directing that they undertake a remedial program, provide regular and periodic training to their policymakers, decision-makers, and supervisory and management level employees concerning the mandates of the First and Fourteenth Amendments to the United States Constitution;

E.    Attorney's fees as provided for by 42 U.S.C. §1988(b), costs of suit and pre-judgment interest; and

F.    Such other equitable relief as this Honorable Court should deem just and proper.

## COUNT II –
## PLAINTIFF v. CITY OF LATROBE
## 42 U.S.C. § 1983 - MUNICIPAL *MONELL* LIABILITY

94.    Paragraphs 1 through 86 and Count I are incorporated by reference as though set forth at length below.

95.    At all times herein mentioned, Defendant City possessed actual and constructive knowledge of Defendants Brasile's and/or McDowell, Jr.'s history of wrongdoing, waste, and/or unlawful retaliation against Latrobe Volunteer Fire Company personnel who exercised their constitutional rights to First Amendment citizen speech on matters of public concern, including the information reported in good faith and pursuant to the Pennsylvania Whistleblower Law, 43 P.S. §§ 1421 – 1428, by Plaintiff Forish and/or the aforesaid Whistleblowers, to wit, Fabian

Giovannagelo, Nico Giovannagelo, Cody Giovannagelo, Christopher Blessing, and/or Ryan Jones, as heretofore described.

96.     At all times herein mentioned, Defendant, City of Latrobe, possessed actual and constructive knowledge of the Bylaws of Latrobe Hose Company No 1 which were adopted on April 12, 1998.

97.     At all times herein mentioned, Defendant City of Latrobe possessed actual and constructive knowledge that Latrobe Hose Company No. 1:

    a.  is a corporation licensed under the non-profit corporation laws of the Commonwealth of Pennsylvania with its address at 390 Oak Street, Latrobe, Westmoreland County, Pennsylvania l5650.

    b.  owns a property located at 300 Alexandria Street, Latrobe, Westmoreland County, Pennsylvania, including its structure and the contents within;

    c.  owns a liquor license issued by the Pennsylvania Liquor Control Board that is capable of generating income for Hose Company No. 1 independently of the control and supervision of the Latrobe Volunteer Fire Company;

    d.  is required by its By-Laws/Code of Laws, adopted April 12, 1998, to engage in fund raising activities to benefit Hose Company No. 1 including, inter alia, an annual street fair (in June), two semi-annual gun bashes (in April and October), an annual cash bash (in February), and a mandatory fundraiser requiring the attendance of all members.

    e.  is lawfully authorized by its By-Laws/Code of Laws to expend financial sums drawn from its own financial resources generated by the aforesaid liquor license and fund raising activities for the welfare and well-being of its members.

98.     At all times herein mentioned, Defendants, City of Latrobe, Latrobe Volunteer Fire Company, Brasile, McDowell, Jr., and Gardner knew, or should have known, prior to the filing of the aforesaid *crimen falsi* felony and misdemeanor criminal charges against Plaintiff Forish and Fabian Giovannagelo that:

    a.   Hose Company No. 1's legal right to retain  attorney representation for its members from its private financial resources --  as set forth in its By-Laws and/or as  authorized by a lawful vote of a quorum of its membership at its  duly conducted January 9, 2020 monthly meeting – was well-established;

    b.   a quorum of the membership of Hose Company No 1    at its duly conducted January 9, 2020 monthly meeting authorized  the payment of funds from Hose Company No. 1's private financial resources  for the retention of legal representation for  its members subjected to unlawful retaliation by Defendant Brasile for exercising  their First Amendment right to citizen speech on matters of public concern,  including the above-named Whistleblowers, as confirmed by Exhibits P-2(a) through P-2(m), which are incorporated by reference as though set forth at length below; and

    c.   that the execution of checks drawn on the private bank account of Hose Company No. 1 by the President (to, wit, Fabian Giovannagelo)  and Treasurer (to wit, Plaintiff Forish) of Hose Company No. 1 to pay for said legal representation of the above-mentioned Whistleblowers, and  as authorized by the vote of a quorum of the membership of Hose Company No. 1 at its duly conducted January 9, 2020 monthly meeting, is lawful and appropriate.

99.    At all times herein mentioned,  no evidence  existed that Plaintiff Forish and Fabian Giovannagelo committed  any acts of theft, misappropriation of funds, or other legal improprieties, including Theft by Deception, 18 Pa.C.S. §3922(a)(1) (Felony 3); Theft by Unlawful Taking or Disposition – Movable Property, 18 Pa.C.S. §3921(a) (Felony 3); and Misapplication of Entrusted Property and Property of Government or Financial Institution, 18 Pa.C.S. §4113(a) (Misdemeanor 2) arising from the payment to Fredrick E. Charles, Esquire by Hose Company No. 1 of the above-referenced sums for legal representation   proximately resulting from Defendants Brasile's wrongdoing, waste, and unconstitutional retaliatory actions against Hose Company No. 1 members, including said Whistleblowers.

100.    At all times herein mentioned, Defendants, City of Latrobe, Latrobe Volunteer Fire Company, Brasile, McDowell, Jr.,  and Gardner knew, or should have known, that they had a legal duty   to conduct a thorough and appropriate investigation of the membership of Hose Company No. 1 to determine whether probable cause existed to support the filing of the aforesaid infamous

*crimen falsi* felony and misdemeanor  criminal charges against Plaintiff Forish and Fabian Giovannagelo.

101.    At all times herein mentioned, and prior to the filing of the aforesaid infamous *crimen falsi* felony and misdemeanor criminal charges against Plaintiff Forish and Fabian Giovannagelo,  Hose Company No. 1's approval  at its January 9, 2020 monthly meeting of   an expenditure of funds from its private financial resources    for any member victimized by the retaliatory tactics of Defendant Brasile was properly  documented in the recorded minutes of said monthly meeting --  which were confiscated by Defendant Gardner following Plaintiff's arrest on the aforesaid *crimen falsi* criminal charges --  and was easily  discoverable and ascertainable by the above-captioned defendants with  a  cursory interview of the aforesaid Hose Co. No. 1 members set forth in paragraph  98(b), which defendants wrongfully failed to perform.

102.    At all times herein mentioned, Defendant City of Latrobe was apprised by Plaintiff Forish and  the aforesaid Whistleblowers of Defendant Brasile's instances of fraudulent and criminal actions, wrongdoing, waste, violations of the constitutional and civil rights of Hose Company No.1 members, and tortious behavior prior the filing of the aforesaid infamous *crimen falsi* felony and misdemeanor criminal charges against Plaintiff Forish and Fabian Giovannagelo.

103.    At all times herein mentioned, Defendant City of Latrobe consciously adhered to an approach that it knew, or should have known, would fail to prevent Defendant Brasile from engaging in future instances of fraudulent and criminal actions, wrongdoing, waste, violations of the constitutional and civil rights of   Hose Company No.1 members, and tortious behavior against Hose Company No. 1 members, including Plaintiff Forish and the aforementioned Whistleblowers, and reacted with deliberate indifference to, and conscious disregard of, its advance  knowledge of

Brasile's propensity to inflict such harm upon others, and failed to properly supervise, discipline, and or re-train him to prevent future constitutional and civil rights violations upon others.

104.    Policymakers' continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action -- the deliberate indifference -- necessary to trigger municipal liability. _Connick v. Thompson_, 563 U.S. 51, 61-62  (2011).

105.    A local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of §1983. _Connick v. Thompson_, 563 U.S. 51, 61 (2011).

106.    Deliberate indifference requires proof that a municipal actor disregarded a known or obvious consequence of his action. Thus, when municipal policymakers are on actual or constructive notice that a particular omission in their training program causes their employees to violate citizens' constitutional rights, the municipality may be deemed deliberately indifferent if the policymakers choose to retain that program.

107.    Defendant City of Latrobe's policy of inaction in light of notice that its program will cause constitutional violations is the functional equivalent of a decision by Defendant City itself to violate the Constitution.  _Connick v. Thompson_, 563 U.S. 51, 61-62 (2011).

108.    A single action may represent an act of "official government policy" if the acting official is an authorized decision-maker.

109.     Defendant City, by and through its City Code has adopted the by-laws of Defendant Fire Department.

110.    In those instances wherein a local government and its high-ranking officials/decision-makers have not set out a formal written policy, Plaintiff may set forth facts that

reveal a governmental custom and/or policy or a "de facto" official policy on behalf of Defendant City.

111.    Plaintiff may prove that Defendant City, by and through its policymakers, decision-makers and supervisory/management level employees, acted pursuant to a custom to retaliate against Plaintiff for his First Amendment activity even if said custom did not receive formal approval through the decision-making channels of the Defendant City.

112.    At all times relevant to the within action, Defendant City has  developed and maintained official policies and customs of retaliating against individuals who engage in constitutionally protected activity and who exercise their First Amendment right to free speech, as described above.

113.    Defendants' aforesaid official policies and customs of violating individual's rights resulted in the violation of Plaintiff Forish's Fourteenth Amendment right to due process and a violation of Plaintiff's liberty interest in his name and reputation.

114.    Defendant City, by and through its supervisory/management level employees, has acted pursuant to said policy and custom and engaged in the constitutional deprivations more fully described above.

115.    Defendant City developed or maintained policies or customs exhibiting deliberate indifference to the constitutional rights of individuals, including individuals' rights to speak as a citizen on matters of public concern and to due process rights protected by the Fourteenth Amendment.

116.    Defendant City developed or maintained policies or customs exhibiting deliberate indifference to unjust, unlawful and retaliatory practices by its supervisory/management level employees, wherein individuals, such as Plaintiff Forish, was retaliated against for exercising his

First Amendment rights to citizen speech on matters of public concern and deprived of his Fourteenth Amendment right to due process.

117.    Defendant City failed or refused to mandate the appropriate in-service training, supervision, and disciplining of its management level agents or employees who were responsible for protecting the civil and constitutional rights of individuals.

118.    Defendant City has maintained inadequate and defective policies, customs and practices in the hiring of its policymakers, decision-makers and supervisory/ management level employees, including all department heads as defined in the Latrobe City Code.

119.    Defendant City has maintained inadequate and defective policies, customs and practices of training its supervisory/management level employees concerning the constitutionally protected rights of individuals, including Plaintiff.

120.    Defendant City failed to adopt policies which were necessary to avoid or prohibit misconduct, civil and constitutional rights violations as set forth herein.

121.    As a result of the defective and inadequate policies and customs described above and the failure to conduct proper screening, interviewing, training, re-training and failure to adopt the necessary and appropriate disciplinary policies, Defendant policymakers, decision-makers and supervisory/management level employees, including Defendants  Brasile and McDowell, Jr. believed that their actions would not be properly monitored and that their acts of misconduct would not be investigated or sanctioned, but rather would be tolerated.

122.    As a result of the existing policies, customs and deliberate indifference of Defendant City and the wrongful and unconstitutional conduct of its policymakers, decision-makers and supervisory/management level employees, individuals such as Plaintiff Forish have been subjected to civil and constitutional rights violations.

123.    Defendant City has adopted, participated in, condoned and acquiesced to the above-described wrongful and unconstitutional conduct of its policymakers, decision-makers and supervisory/management level employees and including Defendants Brasile and McDowell, Jr.

124.    Defendant City has adopted, participated in, condoned and acquiesced to the above-described wrongful, negligent and unconstitutional conduct of Defendant Fire Department in depriving Plaintiff of his constitutional rights.

125.    Defendant City's adopting and maintaining the above-described defective and inadequate policies and customs and its failure to enact the necessary remedial policies demonstrated a conscious and deliberate indifference and disregard for the well-being and constitutional rights of Plaintiff Florish.

WHEREFORE, Plaintiff, Robert Steven Forish, requests that this Honorable Court enter judgment in his favor and against Defendant, City of Latrobe, and determine that Plaintiff has suffered the substantial and continuing injuries set forth above, and that said injuries resulted from the deprivation of his civil and constitutional rights, discrimination and other wrongful conduct by Defendant, City of Latrobe,  and award Plaintiff the following relief:

A.    A declaration that Defendant  has violated Plaintiff's  civil rights;

B.    Compensatory damages in excess of One Hundred Fifty Thousand ($150,000.00) Dollars;

C.    Injunctive relief, including entering an Order enjoining Defendant, City of Latrobe,  and all supervisory and management level employees of the Defendant City of Latrobe from engaging in further violations of the right to freedom of speech and  due process of law  and directing that they undertake a  remedial program, provide regular and periodic training to their policymakers, decision-makers, and supervisory and management level employees concerning the mandates of the First and Fourteenth Amendments to the United States Constitution;

D.    Attorney's fees as provided for by 42 U.S.C. §1988(b), costs of suit and pre-judgment interest; and

E.    Such other equitable relief as this Honorable Court should deem just and proper.

**COUNT III –**
**PLAINTIFF v. ALL DEFENDANTS**
**42 U.S.C. §§ 1983, 1985 - CONSPIRACY**

126.    Paragraphs 1 through 86 and Counts I and II are incorporated by reference as though set forth at length below.

127.    Defendants Gardner, Brasile, McDowell, Jr., and Latrobe Volunteer Fire Department, acting individually or in combination with each other under color of state law, including but not limited to color of any statute, ordinance, regulation, custom or usage and motivated by prejudice against Plaintiff Forish, conspired with each other for the purpose of impeding, obstructing, hindering and defeating the due course of justice and with the intent to deny and deprive him  of  his  well- established First and Fourteenth Amendment rights to freedom of speech and right to due process, retaliated against him for exercising said rights,  and Defendant City condoned, acquiesced to, adopted and participated in the unlawful conduct of Defendants Gardner, Brasile, McDowell, Jr., and  Latrobe Volunteer Fire Department.

128.    Defendants Gardner, Brasile, McDowell, Jr., Latrobe Volunteer Fire Department, and City of Latrobe, acting in concert with each other, entered into an agreement, understanding, plot, plan or conspiracy to carry out the alleged chain of events and overt acts as set forth above, thereby causing Plaintiff Forish to suffer and sustain deprivations of his constitutional rights, injuries and special damages as more fully set forth herein.

129.    Defendants Brasile, McDowell, Jr., Latrobe Volunteer Fire Department, and City of Latrobe plotted, planned, conferred, and conspired to impart     improper, unlawful, and unwarranted   discipline to Plaintiff in retaliation for his exercise of his well-established First Amendment right of freedom of speech as a citizen on matters of public concern.

33

130.    The original agreement, understanding, plot, plan and conspiracy to retaliate against Plaintiff for exercising his protected First Amendment right to citizen speech about matters of public concern was entered into between Defendants City of Latrobe, Brasile, McDowell, Jr., and Latrobe Volunteer Fire Department contemporaneously with the following overt acts and events:

a.  May 27, 2020, when in direct retaliation for their protected citizen's speech on matters of public concern and in further violation of the Latrobe City Code, LVFD By-laws, and Hose Company No. 1 By-laws, Defendant Fire Chief Brasile expelled Fabian Giovannagelo and four (4) other members of Hose Company No. 1, to wit, C. Giovannagelo, N. Giovannagelo, Blessing and Jones, from the LVFD, and letters of expulsion were served upon said individuals by Constable on or about May 29, 2020. Copies of said letters of expulsion are collectively attached hereto as Exhibits "P-6(a)" through "P-6(e)" inclusive and incorporated by reference as though set forth at length below.

b.  May 30, 2020, when in accordance with the aforesaid unanimous agreement of the quorum/members of Hose Company No. 1 attending the January 9, 2020 meeting, to wit, to provide financial assistance for legal representation to any member subjected to Brasile's unlawful retaliatory and expulsion tactics, a check (No. 5356) was issued from Hose Company No. 1's bank account with Westmoreland Federal Savings and Loan Association of Latrobe to Fredrick E. Charles, Esquire in the amount of Five Thousand Five Hundred ($5,500.00) Dollars, and co-signed by Plaintiff Forish, Treasurer. A copy of said check is attached hereto as Exhibit "P-7" and incorporated by reference as though set forth at length below;

c.  June 5, 2020, when Defendant McDowell, Jr. first received hand-delivered written correspondence from Fredrick E. Charles, Esquire requesting a hearing before the Board of Appeals on behalf of Plaintiff Forish's aforesaid authorized representatives, to wit, the expelled Whistleblowers/members of Hose Company No. 1;

d.  On or before June 25, 2020, when Plaintiff Forish, in his capacity as LVFD First Vice President and Hose Company No. 1's elected representative to the Board of Appeals, attempted to ascertain whether an appeal hearing had been scheduled on behalf of his authorized representatives under the Pennsylvania Whistleblower's Law, to wit, the expelled members of Hose Company No. 1, but was not provided any information by Defendants McDowell, Jr. or Brasile concerning an appeal before the Board of Appeals and was further threatened by Defendant Brasile with arrest if Plaintiff Forish attempted to appear or participate in any appeal proceedings involving the aforesaid expelled members

34

of Hose Company No. 1.;

e.  June 25, 2020, when Fredrick E. Charles, Esquire, on behalf of the expelled members of Hose Company No. 1, forwarded correspondence to Kim R. Houser, Esquire, Solicitor for the LVFD and John K. Greiner, Esquire, Solicitor for the City of Latrobe, advising them of the above-described procedural illegalities and errors in the expulsion appeal process and requesting their intervention on behalf of their respective principals in order to correct said illegalities and errors;

f.  July 9, 2020 and July 14, 2020, when Fredrick E. Charles, Esquire forwarded correspondence to City of Latrobe Manager, Michael Gray and Solicitors Houser and Greiner, requesting that the City of Latrobe immediately reverse the illegal expulsion of the aforesaid members of Hose Company No. 1;

g.  July 10, 2020, when in accordance with the aforesaid unanimous agreement of the quorum/members of Hose Company No. 1 attending the January 9, 2020 meeting, to wit, to provide financial assistance for legal representation to any member subjected to Brasile's unlawful retaliatory and expulsion tactics, a check (No. 5364) was issued from Hose Company No. 1's bank account with Westmoreland Federal Savings and Loan Association of Latrobe to Fredrick E. Charles, Esquire in the amount of Ten Thousand ($10,000.00) Dollars, and co-signed by its Treasurer, Plaintiff Forish. A copy of said check is attached hereto as Exhibit "P-10" and incorporated by reference as though set forth at length below;

h.  August 14, 2020, when Fredrick E. Charles, Esquire filed a federal lawsuit in the United States District Court for the Western District of Pennsylvania (term number 2:20-cv-1212) on behalf of the aforesaid expelled members of Hose Company No. 1, to wit, Fabian Giovannagelo, Cody Giovannagelo, Nico Giovannagelo, Christopher Blessing, and Ryan Jones, as plaintiffs and naming (i) Latrobe Fire Chief Brasile, (ii) the Latrobe Volunteer Fire Department (LVFD), (iii) the City of Latrobe, (iv) Rosemarie M. Wolford, Mayor, and (v) LVFD President, Chuck McDowell, Jr. as Defendants.

131.  Defendant Gardner's agreement, understanding, plot, plan and conspiracy with Defendants City of Latrobe, Brasile, McDowell, Jr., and Latrobe Volunteer Fire Department to retaliate against Plaintiff Forish for exercising his protected First Amendment rights of citizen speech on matters of public concern was on-going, and the overt acts and events of July 20, 2021, to wit, when Gardner, on behalf of the Commonwealth of Pennsylvania/Westmoreland County Detective Bureau, filed criminal charges against Plaintiff Forish and Fabian Giovannagelo,

charging each of them with Theft by Deception, 18 Pa.C.S. §3922(a)(1) (Felony 3); Theft by Unlawful Taking or Disposition – Movable Property, 18 Pa.C.S. §3921(a) (Felony 3); and Misapplication of Entrusted Property and Property of Government or Financial Institution, 18 Pa.C.S. §4113(a) (Misdemeanor 2) arising from the payment of the above-referenced checks from Hose Company No. 1 to Fredrick E. Charles, Esquire, were contemporaneous with and in furtherance of said conspiracy. A copy of the Police Criminal Complaint and Affidavit of Probable Cause filed against Giovannagelo, and the Unified Judicial System of Pennsylvania Web Portal Docket Statements of Giovannagelo (MJ-10208-CR-0000275-2021 ) and Forish (MJ-10208-CR-0000274-2021) are attached hereto as Exhibits "P-12," "P-13," and "P-14," respectively, and incorporated by reference as though set forth at length below.

132.    At all times relevant to the within action, Defendant City  acquiesced to, condoned, adopted and participated in the unlawful conspiratorial conduct of Defendants Brasile, McDowell, Jr., Latrobe Volunteer Fire Department, and Gardner.

133.    At all times herein mentioned, a "meeting of the minds" or "understanding or agreement to conspire" can be "infer[red]" from circumstantial evidence. *Startzell v. City of Philadelphia*, 533 F.3d 183, 205 (3d Cir. 2008).

WHEREFORE, Plaintiff, Robert Steven Forish, requests that this Honorable Court enter judgment in his favor and against Defendants, jointly and severally, and determine that Plaintiff has suffered the substantial and continuing injuries set forth above, and that said injuries resulted from the deprivation of his civil and constitutional rights, discrimination and other wrongful conduct by Defendants and award Plaintiff the following relief:

A.    A declaration that Defendants have violated Plaintiff's civil rights;

B.    Compensatory damages in excess of One Hundred Fifty Thousand ($ 150,000.00) Dollars;

C.    Punitive and exemplary damages, as appropriate, against the non-municipal Defendants in their individual capacities;

D.    Injunctive relief, including entering an Order enjoining Defendants and all supervisory and management level employees of the Defendant City of Latrobe from engaging in further violations of the right to freedom of speech and procedural due process and directing that they undertake a remedial program, provide regular and periodic training to their policymakers, decision-makers, and supervisory and management level employees concerning the mandates of the First and Fourteenth Amendments to the United States Constitution;

E.    Attorney's fees as provided for by 42 U.S.C. §1988(b), costs of suit and pre-judgment interest; and

F.    Such other equitable relief as this Honorable Court should deem just and proper.

### COUNT IV –
### PLAINTIFF v. ALL DEFENDANTS
### SUPPLEMENTAL STATE LAW CLAIM – 28 U.S.C. §1367(a) -
### MALICIOUS PROSECUTION

134.    Paragraphs 1 through 86 and Counts I, II, and III are incorporated by reference as though set forth at length below.

135.    At all times herein mentioned,   the above-captioned defendants, individually and collectively, were responsible for causing the above-described criminal proceedings before Magisterial District Justice Joseph A. Cannoni to be initiated against Plaintiff Forish and Fabian Giovannagelo on July 20, 2021, resulting in their arrest  on infamous *crimen falsi* felony and misdemeanor criminal charges and/or seizure of their property by the Commonwealth of Pennsylvania, all of which was highly publicized and document by the newspaper and television media.

136.    At all times herein mentioned, the above-captioned defendants, individually and collectively, acted with malice and without probable cause for their actions in criminally prosecuting Plaintiff Forish and Fabian Giovannagelo for infamous *crimen falsi* criminal offenses, including Theft by Deception, 18 Pa.C.S. §3922(a)(1) (Felony 3); Theft by Unlawful Taking or Disposition – Movable Property, 18 Pa.C.S. §3921(a) (Felony 3); and Misapplication of Entrusted Property and Property of Government or Financial Institution, 18 Pa.C.S. §4113(a) (Misdemeanor 2) arising from the payment of the above-referenced checks from Hose Company No. 1 to Fredrick E. Charles, Esquire.

137.    At all times herein mentioned, Defendant Brasile, in his official capacity as Fire Chief for the Latrobe Volunteer Fire Department, and pursuant to the legal principal of *respondeat superior*:

   a.  was legally responsible for all actions, decisions, and courses of conduct engaged in by the officers and/or volunteer fire fighters/members of the various Hose Companies comprising Defendant, Latrobe Volunteer Fire Department; and

   b.  had policy-making authority for Defendant Fire Department and was responsible for carrying out his supervisory responsibilities in a manner which complied with all federal and state laws, the Latrobe City Code, Defendant Fire Department By-laws and the individual by-laws for each incorporated hose company.

138.    At all times herein mentioned, the above-captioned defendants lacked reasonable ground of suspicion supported by circumstances sufficient to warrant that an ordinary, prudent person in a similar situation could believe that plaintiff Forish and Fabian Giovannagelo were guilty of the criminal offenses charged. See *Turano v. Hunt, 631 A.2d 822 (Pa.Cmwlth. 1993)*.

139.    On December 20, 2021, the above-described criminal charges against Plaintiff Forish and Fabian Giovannagelo were withdrawn and, pursuant to agreement of all parties, the determination of the legality of the aforesaid payments to Fredrick E Charles Esquire from the

financial resources of Hose Company No. 1 was placed in the hands of the Court of Common Pleas of Westmoreland County pursuant to an Interpleader Petition to be filed by Plaintiff Forish and Fabian Giovannagelo in accordance with Rules 2301 through 2324 of the Pennsylvania Rules of Civil Procedure.

140.    An official court hearing was scheduled and conducted on or about Monday, August 29, 2022 before the Honorable Harry F. Smail, Jr., Judge of the Court of Common Pleas of Westmoreland County, Pennsylvania, concerning the aforesaid Interpleader petition (Case No. 281 of 2022).

141.    The above-described August 29, 2022 hearing was attended by the above-captioned parties and their legal representatives, including    Westmoreland County Assistant District Attorney Leo J. Ciaramitaro, Esquire on behalf of the Commonwealth and the above-named defendants,  and Dennis G. Charles, Esquire and Jason N. Huska, Esquire on behalf of Plaintiff Forish and Fabian Giovannagelo, respectively.

142.    All evidence was presented to Judge Smail and fairly litigated on or about August 29, 2022 surrounding the payment of the above-described legal retainer to Fredrick E. Charles, Esquire by Plaintiff Forish and Fabian Giovannagelo from the private financial resources of Hose Company No. 1,  pursuant to legal authority resulting from the unanimous vote of a quorum of the membership of Hose Company No. 1 on January 9, 2020,  and on behalf of its above-referenced Whistleblower volunteer firemen who were expelled from Defendant Fire Company by Defendant Brasile and the above-named defendants.

143.    The Commonwealth of Pennsylvania failed to answer the above-described Petition for Interpleader filed by Plaintiff Forish and Fabian Giovannagelo, and offered no evidence at said Interpleader hearing to rebut Petitioners Forish's and Giovannagelo's evidence establishing the

legality and propriety of their payment of Fredrick E. Charles, Esquire's legal retainer from Hose Company No. 1 funds.

144.    On August 30, 2022, the Honorable Harry F. Smail, Jr. favorably determined the aforesaid Interpleader Petition on behalf of Plaintiff Forish and Fabian Giovannagelo, upheld the termination of said criminal proceedings with prejudice, and prohibited any further criminal allegations to be filed by the Commonwealth of Pennsylvania on behalf of the above-captioned defendants against Plaintiff Forish and Fabian Giovannagelo arising from the payment of the aforesaid legal retainer of Fredrick E Charles, Esquire from the funds of Hose Company No. 1. The content of the Honorable Harry F. Smail, Jr.'s August 30, 2022 Order of Court, and the Petition for Interpleader, are incorporated by reference as though set forth at length below.

145.    It is respectfully submitted that the above-captioned defendants are collaterally estopped by the Court of Common Pleas of Westmoreland County's termination with prejudice of Defendants' above-referenced criminal charges and allegations of  wrongdoing by Plaintiff Forish and Fabian Giovannagelo, and decision in favor of Plaintiff Forish and Fabian Giovannagelo, including the Court's acceptance of all allegations contained in the Interpleader petition as true,    following the August 29, 2022 Interpleader hearing.

146.    As a direct and proximate result of the above-captioned defendants' intentional and reckless conduct and malicious prosecution of Plaintiff Forish as heretofore described, he suffered severe harm and damages, some or all of which may be permanent, including;

      a.  lawyers' fees incurred by Plaintiff Forish in his successful defense of the criminal charges that the above-captioned defendants caused be brought against him, as well as in said Interpleader cause of action;

      b.  harm to his formerly unblemished reputation for honesty, truthfulness, veracity, and law abidingness  in the community;

    c.   pecuniary or financial losses resulting from the above-captioned defendants' extreme and outrageous conduct as heretofore described; and

    d.   severe, intense, and highly unpleasant mental reactions and emotional stress, such as mental anguish, embarrassment, humiliation, depression, anxiety, horror, grief, shame, anger, chagrin, disappointment, worry, and other mental disorders and symptoms classified in the Diagnostic and Statistical Manual of Mental Disorders-Fifth Edition-Text Revised (DSM-V-TR), as amended, as well as cardiac and other physical harm and maladies as set forth in Plaintiff Forish's medical records, which are incorporated by reference as though set forth at length below, and arising from the above-captioned defendants' extreme and outrageous conduct as heretofore described.

147.    At all times herein mentioned, the aforesaid harm and damages suffered by Plaintiff Forish were the direct and proximate result of the Defendants' intentional and reckless conduct and malicious prosecution of him as heretofore described, and was not caused by any negligent act or failure to act on the part of the Plaintiff Forish, who at all times conducted himself in a careful, prudent and law-abiding manner.

148.    Plaintiff, Forish has pursued all necessary and reasonable measures to mitigate his damages suffered in the above-described malicious prosecution.

149.    At all times herein mentioned, the above-described defendants' malicious prosecution of Plaintiff Forish with the above-described *crimen falsi* felony and misdemeanor criminal offenses without supporting evidence or probable cause constituted extreme, outrageous, and reprehensible conduct that goes beyond all possible bounds of decency and would be regarded as atrocious and utterly intolerable in a civilized community, thus meriting the award of punitive damages against all non-municipal defendants, jointly and severally.

WHEREFORE, the Plaintiff, Robert Steven Forish, demands judgment against the above-captioned defendants for general and special damages and costs of suit, and punitive damages, jointly and severally, against the above-captioned non-municipal defendants, as appropriate, and such additional relief as this Honorable Court deems appropriate.

<u>**COUNT V –**</u>
<u>**PLAINTIFF v. ALL DEFENDANTS**</u>
<u>**SUPPLEMENTAL STATE LAW CLAIM – 28 U.S.C. §1367(a) -**</u>
<u>**ABUSE OF PROCESS**</u>

150.    Paragraphs 1 through 86 and Counts I, II, III, and IV are incorporated by reference as though set forth at length below.

151.    On July 20, 2021, Defendant Gardner, following consultation with Defendants Brasile, McDowell, Jr., Latrobe Volunteer Fire Company, and/or City of Latrobe, filed a criminal complaint (No. 20210258) against Plaintiff Forish at Docket Number at MJ-10208-CR-0000274-2021 and OTN Number R 157013-3 charging him with the *crimen falsi* criminal offenses of Theft by Deception, 18 Pa.C.S. §3922(a)(1) (Felony 3); Theft by Unlawful Taking or Disposition – Movable Property, 18 Pa.C.S. §3921(a) (Felony 3); and Misapplication of Entrusted Property and Property of Government or Financial Institution, 18 Pa.C.S. §4113(a) (Misdemeanor 2) arising from the payment of the above-referenced checks from Hose Company No. 1 to Fredrick E. Charles, Esquire.

152.    On July 20, 2021, Plaintiff Forish was arrested without warrant by Defendant Gardner and preliminarily arraigned on the above-described *crimen falsi* felony and misdemeanor criminal charges before Magisterial District Justice Joseph A. Cannoni.

153.    On July 20, 2021, Plaintiff Forish's freedom, good name and reputation were irreparably harmed when he was arrested by Defendant Gardner without probable cause, subjected to the power and control of the Commonwealth of Pennsylvania, and placed under the terms and conditions of $25,000 unsecured bail.

154.    At all times herein mentioned, no probable cause or evidence existed to legally justify the Commonwealth of Pennsylvania's arrest of Plaintiff Forish and Fabian Giovannagelo

on the above-referenced *crimen falsi* felony and misdemeanor criminal charges, and a determination in favor of Plaintiff Forish and Fabian Giovannagelo to said effect ultimately was made by the Honorable Harry F. Smail, Jr., Judge of the Court of Common Pleas of Westmoreland County, on August 30, 2022.

155.    At all times herein mentioned, Defendant Gardner acted in concert, and pursuant to a plot, plan, scheme, or conspiracy, with Defendants Brasile, McDowell, Jr., Latrobe Volunteer Fire Department and its representatives, and/or the City of Latrobe   to abuse the criminal justice system and the arrest power of the Commonwealth of Pennsylvania in order to punish and unlawfully retaliate against Plaintiff Forish and the aforementioned volunteer firemen, to wit, Fabian Giovannagelo, Cody Giovannagelo, Nico Giovannagelo, Christopher Blessing, and Ryan Jones, for their good faith reporting and disclosures pursuant to the First Amendment and the Pennsylvania Whistleblower Law, 43 P.S. §§ 1423 – 1428, concerning instances of criminal and civil wrongdoing, fraud, and/or waste by Defendants Brasile, McDowell, Jr., and/or the City of Latrobe   in their operation, control,   and management of   Defendant Latrobe Volunteer Fire Department.

156.    At all times herein mentioned, Defendant Gardner acted in concert, and pursuant to a plot, plan, scheme, or conspiracy, with Defendants Brasile, McDowell, Jr., Latrobe Volunteer Fire Department, and/or the City of Latrobe    to abuse the criminal justice system and the arrest power of the Commonwealth of Pennsylvania in order to chill, impede, obstruct, and hinder further investigation and public disclosure by Plaintiff Forish and the aforementioned volunteer firemen, to wit, Fabian Giovannagelo, Cody Giovannagelo, Nico Giovannagelo, Christopher Blessing, and Ryan Jones, of the instances of civil and criminal wrongdoing, fraud, waste, and constitutional

violations by Defendants Brasile, McDowell, Jr.,   Latrobe Volunteer Fire Department, and City of Latrobe, as heretofore described.

157.    Following Defendant Gardner's arrests of Plaintiff Forish and Fabian Giovannagelo on July 20, 2021    on the above-stated infamous *crimen falsi* felony and misdemeanor criminal charges, Defendant Brasile announced to the media, and it was reported in the newspaper, that he felt "vindicated" by said arrests.

158.    Where the actor misuses the custody which he has obtained of another by a privileged arrest under a warrant, his misuse is an abuse of process. *Restatement (Second) of Torts § 136, comment d.*

159.    Where the arrest is made without a warrant, there is no process to abuse, but the actor's misuse of the power which the custody taken under such an arrest gives him over the other is an abuse of his privilege to arrest and has the same effect as an abuse of process.  *Restatement (Second) of Torts § 136, comment d.*

160.    At all times herein mentioned, Defendant Gardner, working in concert with Defendant Brasile and the above-captioned defendants, misused and perverted the custody which he obtained over Plaintiff Forish and Fabian Giovannagelo by  arrest with or without warrant, and constitutes an abuse of process. See *Publix Drug Co. v. Breyer Ice Cream Co, 32 A.2d 413, 415 (Pa. 1943)*.

161.    At all times herein mentioned, the above-described defendants' abuse of process proximately resulting from the filing of the above-described  infamous, *crimen falsi* felony and misdemeanor criminal offenses against Plaintiff Forish and Fabian Giovannagelo without probable cause or supporting evidence and constituted extreme, outrageous, and reprehensible conduct that goes beyond all possible bounds of decency and would be regarded as atrocious and

utterly intolerable in a civilized community, thus meriting the award of punitive damages against all non-municipal defendants, jointly and severally.

WHEREFORE, the Plaintiff, Robert Steven Forish,  demands judgment against the above-captioned  defendants for general and special damages and costs of suit, and  punitive damages, jointly and severally, against the above-captioned non-municipal defendants, as appropriate, and such additional relief as this Honorable Court deems appropriate.

**COUNT VI –**
**PLAINTIFF v. ALL DEFENDANTS**
**SUPPLEMENTAL STATE LAW CLAIM – 28 U.S.C. §1367(a) -**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

162.    Paragraphs 1 through 86 and Counts I, II, III, IV, and V are incorporated by reference as though set forth at length below.

163.    The aforesaid extreme and outrageous conduct, acts or omissions of the Defendants within the scope of their employment were calculated, designed and intended to intentionally inflict deliberate emotional distress, psychological trauma, and physical and/or emotional pain and suffering upon Plaintiff Forish.

164.    Defendants engaged in said conduct with the intent to instill an immediate and permanent sense of fear in the mind of Plaintiff Forish.

165.    Plaintiff Forish suffered extreme and traumatic emotional distress, fear, anxiety, embarrassment, humiliation, pecuniary loss, loss of life's enjoyments and pleasures, and resulting physical, psychological, and emotional pain, all to his great detriment, and as a direct and proximate result of the above-captioned Defendants' willful misconduct and intentional, outrageous, and egregious behavior that went  beyond all possible bounds of decency and would be regarded as atrocious and utterly intolerable in a civilized community.

166.    The cause of action against the above-named Defendants for the tort of Intentional Infliction of Emotional Distress is recognized under the laws of the Commonwealth of Pennsylvania and by the Pennsylvania courts. *Papieves v. Kelly, 263 A.2d 118 (Pa. 1970)*; *Restatement (Second) of Torts § 46(1); Pa. SSJI (Civ) 17.40*.

167.    Defendants' above-described outrageous, atrocious, and egregious behavior towards Plaintiff Forish directly and proximately caused him to suffer severe, intense, continuing, and disabling emotional distress, all of which may be permanent in nature.

168.    As a direct and proximate result of the Defendants' intentional and malicious actions and the physical, psychiatric and emotional harm that proximately resulted therefrom, Plaintiff Forish incurred, and will continue to incur, financial expenses, medical bills, and economic loss, to his great detriment and for which he is entitled to recover damages.

169.    As a direct and proximate result of the intentional, outrageous, atrocious, egregious, dishonest, and injurious conduct, actions, and omissions of the above-captioned defendants, Plaintiff Forish suffered extreme emotional and psychological stress, trauma, mental anguish, pain and suffering, fright, horror, grief, shame, embarrassment, and humiliation, and is entitled to punitive damages, jointly and severally, against the individual/non-municipal defendants.

WHEREFORE, the Plaintiff, Robert Steven Forish, demands judgment against the above-captioned defendants for general and special damages and costs of suit, and punitive damages, jointly and severally, against the above-captioned non-municipal defendants, as appropriate, and such additional relief as this Honorable Court deems appropriate.

## DEMAND FOR JURY TRIAL

170.    Plaintiff hereby demands a jury trial on all issues of facts and damages in this action.

Respectfully submitted.


/s/ Dennis G. Charles, Esquire
Dennis G. Charles, Esquire
441 Linden Street
Allentown, PA  18102
610-437-7064
dennis@charleslaw.us
PA Attorney I.D. No. 30204
Attorney for Plaintiff

47